FILED
2013 Feb-07  PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **JOEL BRENT MCCAIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:11-CV-25-VEH** |
| | ) | |
| **IMERY'S CARBONATES LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION AND ORDER

THIS CAUSE is before the court on the Defendant's Motion for Summary Judgment (the "Motion") (Doc. 25). Plaintiff timely responded on October 15, 2012. (Doc. 33.) Defendant timely replied on November 8, 2012. (Doc. 36.) The Motion is now ripe for disposition.

## I.    FACTS

Defendant Imery's Carbonates LLC ("Imery's") operates a ground calcium carbonate processing facility in Sylacauga, Alabama. Plaintiff Joel Brent McCain ("McCain") began working for Imery's in 1999, when Imery's acquired McCain's former employer. In 2001, Imery's entered into a collective bargaining agreement with the United Steelworkers. This agreement sets the terms and conditions of McCain's employment.

McCain worked as a mechanic.  The collective bargaining agreement divides Imery's mechanics into two classifications: Mechanic A's and Mechanic B's.  The dividing line between these two groups is a written test.  Mechanic B's who pass the test become Mechanic A's.  Mechanic A's are paid more than Mechanic B's and receive other benefits.  Imery's allows its Mechanic B's to take the test more than once.  Imery's contends that Mechanic A's possess greater skill than Mechanic B's.  However, it is undisputed that Mechanic A's and Mechanic B's perform the same duties.  (Doc. 33 at 14, ¶¶ 19 & 21; Doc. 36 at 2 n.1; Doc. 36 at 3, ¶ 21.)  Additionally, it is undisputed that Imery's does not distinguish between Mechanic A's and Mechanic B's in its work assignments.  (Doc. 33 at 14, ¶ 21; Doc. 33 at 15, ¶¶ 24 & 26.)

McCain has been a Mechanic B since Imery's negotiated the collective bargaining agreement in 2001.  Between 2001 to 2009, McCain took Imery's Mechanic A test twice and failed both times.[1]  McCain was not the only Imery's employee who had difficulty passing the Mechanic A test.  (*See* Doc. 32-2 at 5, 7.) Perhaps for this reason, Imery's lowered the passing score on the Mechanic A test

---

[1]  The first test was designed by Shelby Halverson, an Imery's employee.  (Doc. 33 at 10, ¶ 6.)  The second test was the test developed by the Ramsey Corporation that Imery's currently uses.  (*See* Doc. 26 at 5, ¶ 10; Doc. 33 at 14–17, ¶¶ 27–34.)

2

from a ninety-eight (98) to an eighty-nine (89).  (*See* Doc. 32-4 at 9.)  This change

occurred in the spring of 2007.  However, even after this change, McCain did not

qualify to advance to a Mechanic A position.  (*See* Doc. 32-3 at 21) (showing

McCain scored a forty-one (41) on the Mechanic A test).

In late 2007 and early 2008, Imery's offered an alternate route for its

Mechanic B's to become Mechanic A's.  Mechanic B's could take eight training

courses through the Alabama Technology Network.  If a Mechanic B passed all

eight courses, he would become a Mechanic A.  McCain participated in all eight

courses and passed seven of them.  (Doc. 33 at 11, ¶ 7.)  He was not promoted.

McCain contends that Imery's test requirement prevented him from

becoming a Mechanic A.  Specifically, McCain contends Imery's Mechanic A test

has a disparate impact on African Americans.  It is unclear when Imery's began

using the challenged test, but it is undisputed that Imery's administered the test on

January 12, 2010.  (Doc. 33 at 12, ¶ 15; Doc. 36 at 2 n.1.)

McCain also contends that white employees received special treatment

regarding the Mechanic A test.  To support this allegation, McCain relies on the

following evidence.  First, McCain says that Tony Abrams (a white employee) told

him that he was given extra points so that he could pass.  (Doc. 32-1 at 7, ¶ 17.)

Additionally, McCain says that Charles Stephenson (a white employee) told him

he never took or passed the Mechanic A test, and yet he was promoted to a Mechanic A position.[2]  (Doc. 32-1 at 7, ¶ 18.)

Second, McCain says that two white employees, Timothy Denton and Tony Abrams, failed the Mechanic A test in 2006, but were still promoted to a Mechanic A position in 2007.  (Doc. 33 at 26.)  Imery's records do not show that these employees took and passed the Mechanic A test in 2007.  (*Id.*)  But, it is undisputed that both Denton and Abrams scored eighty-nine (89) or higher on their 2006 tests.  (*See* Doc. 32-3 at 5, 7.)

Third, McCain says that two other white employees, Michael Black and Leslie Buchanan, became Mechanic A's though they never scored eighty-nine (89) or higher on the Mechanic A test.  (*See* Doc. 33 at 26; Doc. 32-3 at 21.)  But, it is undisputed that both Black and Buchanan successfully completed all eight training courses offered through the Alabama Technology Network.  (Doc. 32-3 at 21.)

In August 2009, Imery's decided to reduce its work force by twenty-five (25) per cent.  Imery's contends that a sharp decrease in demand for ground calcium carbonate spurred this decision.  At that time, Imery's employed twenty-

---

[2]  To show white employees received special treatment, McCain also relies on the Declaration of Buford Bryant (Doc. 32-1 at 9–13), another African-American Mechanic B. However, because Bryant's allegations are substantially similar to McCain's allegations, the court's treatment of McCain's Declaration applies equally to Bryant's Declaration.  (*Compare* Doc. 32-1 at 7, ¶ 17–18 *with* Doc. 32-1 at 13, ¶ 17–18.)

five (25) Mechanic A's and seven (7) Mechanic B's.  There were only two (2) African-American Mechanic B's and no African-American Mechanic A's.  Rather than lay off any Mechanic A's, Imery's elected to eliminate the Mechanic B position.  Imery's contends its decision was consistent with Article 13 of the collective bargaining agreement, which provides: "[a]ll cases of reduction or changes in the work force shall first be carried out within each classification, within each respective department."  (Doc. 27-4 at 15.)  It is undisputed that Imery's laid off all seven (7) Mechanic B's effective September 1, 2009.

Under the collective bargaining agreement, McCain could "bump" a less senior employee in a lower classification.  McCain exercised this option and became a Haul Truck Driver.  In this position, McCain is paid significantly less than he was as a Mechanic B.

On August 25, 2009, shortly after McCain learned about the lay-off, he filed an EEOC charge alleging age discrimination.  In December 2009, McCain amended his charge to include a race discrimination claim.  Finally, on February 24, 2010, McCain amended his charge to include a disparate impact race discrimination claim.  (Doc. 32-3 at 17.)  After the EEOC issued McCain a right-to-sue letter, McCain brought this action.

McCain's Amended Complaint (Doc. 7) asserts three types of claims: (1)

5

disparate treatment under Title VII and 42 U.S.C. § 1981, (2) disparate impact under Title VII, and (3) unlawful age discrimination under the Age Discrimination in Employment Act (ADEA).

## II.   LEGAL STANDARD

### A.   General Summary Judgment Standard

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R .Civ. P. 56(a).  "All reasonable doubts about the facts" and "all justifiable inferences" are resolved in favor of the nonmoving party.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).[3]  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  The substantive law will identify which facts are material and which are immaterial.  *Id.*

---

[3]  Rule 56 was amended in 2010. The Advisory Committee was careful to note, however, that "[t]he standard for granting summary judgment remains unchanged."  Fed. R. Civ. P. 56 advisory committee's note to 2010 amendments.  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

The summary judgment analysis varies somewhat depending on which party bears the burden of proof at trial.  *See Fitzpatrick*, 2 F.3d at 1115–17.  If the moving party would bear the burden of proof on an issue, then it may meet its burden on summary judgment only by presenting positive evidence demonstrating an absence of a genuine issue of material fact—i.e., facts that would entitle the nonmoving party to a directed verdict if not controverted at trial.  *Id.* at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.  *Id.*

If the nonmoving party would bear the burden of proof on an issue at trial, then the moving party can satisfy its initial burden on summary judgment in either of two ways.  *Id.* at 1115–16.  First, the moving party may produce affirmative evidence negating a material fact, thereby demonstrating that the nonmoving party will be unable to prove its case at trial.  *Id.* at 1116.  If the moving party produces such evidence, then the nonmoving party must respond with positive evidence sufficient to defeat a motion for a directed verdict at trial.  *Id.*

Second, the moving party may affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on a material element. *Id.*  The moving party is not required to produce evidence negating its opponent's

claim, but it must direct the court to the hole in the nonmoving party's case. *Id.* at 1115–16.

If the moving party satisfies this burden, the nonmoving party may point to evidence in the record, or come forward with additional evidence, which would be sufficient to sustain a judgment at trial. *Id.* at 1116-17. The nonmoving party cannot simply rest on mere allegations; he must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358, 116 S. Ct. 2174, 2183 (1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136–37 (1992)).

**B.     Relevant Substantive Law[4]**

  1.     McCain's Disparate Treatment Claims

McCain alleges disparate treatment claims under Title VII and 42 U.S.C. § 1981. "Both of these statutes have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Thus, the following statement of the law applies equally to both claims.

McCain does not argue that he has direct evidence of discrimination.

---

[4] As discussed at Section III.C *infra*, McCain has abandoned his age discrimination claim. Thus, the court will not discuss the substantive law relevant to this claim.

8

Therefore, the court will analyze McCain's claim under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).  *See Standard*, 161 F.3d at 1331.

> Under *McDonnell Douglas*, a plaintiff establishes a prima facie case of race discrimination under Title VII by showing: (1) he belongs to a racial minority; (2) he was subjected to [an] adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job. Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination.
>
> . . . As part of the Title VII plaintiff's prima facie case, the plaintiff must show that his employer treated similarly situated employees outside his classification more favorably than [himself].  To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects.  In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.

*Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (internal citations omitted).  Once a plaintiff establishes a prima facie case, the defendant must produce a legitimate nondiscriminatory reason for its employment decision.  *See Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995).  If the defendant meets its burden of production, then the plaintiff must come forward with evidence sufficient to support an inference that unlawful discrimination

actually motivated the defendant's decision.  *Id.*  A plaintiff may meet his burden

"either directly by persuading the court that a discriminatory reason more likely

motivated the employer or indirectly by showing that the employer's proffered

explanation is unworthy of credence."  *Texas Dep't of Cmty. Affairs v. Burdine*,

450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981).

2.   <u>Timeliness of Title VII Disparate Treatment Claims</u>

It is well settled that a Title VII plaintiff must file a charge of discrimination

within one hundred and eighty (180) days of the allegedly unlawful employment

practice.  *See* 42 U.S.C. § 2000e-5(e)(1); *Beavers v. Am. Cast Iron Pipe Co.*, 975

F.2d 792, 796 (11th Cir. 1992).  However, the Eleventh Circuit distinguishes

between employment practices or decisions which are discrete acts and practices

or decisions which are continuing violations.  *See Beavers*, 975 F.2d at 796

("Where an employee charges an employer with continuously maintaining an

illegal employment practice, he may file a valid charge of discrimination based

upon that illegal practice until 180 days after the last occurrence of an instance of

that practice.  However, where the employer engaged in a discrete act of

discrimination more than 180 days prior to the filing of a charge with the EEOC

by the employee, allegations that the discriminatory act continues to adversely

affect the employee or that the employer presently refuses to rectify its past

10

violation will not satisfy the requirement of 42 U.S.C. § 2000e-5(e) . . . .").  A

discrete act usually involves a single instance of discrimination.  *See id.* at 797.

Conversely, a continuing violation usually involves a policy or practice.  *See id.* at

796–97.

In *Beavers v. American Cast Iron Pipe Co.*, the Eleventh Circuit explained

what constitutes a continuing violation.  975 F.2d 792.  The defendant in *Beavers*

maintained a policy of denying insurance coverage to children of its employees

who did not reside with the employee.  It was undisputed that the plaintiff had

failed to file a charge of discrimination within one hundred and eighty (180) days

of becoming subject to this policy.  *See id.* at 796.  Nonetheless, the Eleventh

Circuit found that the plaintiff's claim was timely.  *Id.* at 798.  The court reasoned

that, because the defendant denied insurance coverage under an established policy,

each week the defendant continued to deny insurance coverage was a new wrong

actionable under Title VII.  *Id.*

Additionally, the *Beavers* court merely applied the standard from a former

Fifth Circuit case, *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 249

(5th Cir. 1980).[5]  In *Gonzalez*, the plaintiff alleged that the defendant

---

[5]  In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh
Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior
to the close of business on September 30, 1981.

discriminated against him through a testing system.  In reversing the district court, the Fifth Circuit said, "Where an employee charges an employer with continuously maintaining an illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days <u>after the last occurrence of an instance of that practice.</u>" *Id.* at 249 (emphasis added).  Thus, the Fifth Circuit concluded that, if the defendant had continued to use the allegedly discriminatory testing system within the one hundred and eighty (180) days before plaintiff had filed his charge of discrimination, then his claim was timely.  *Id.*

## III.   ANALYSIS

### A.    McCain's Disparate Treatment Claims

As explained earlier, Title VII and § 1981 involve the same standards of proof and use the same analytical framework.  *See Standard*, 161 F.3d at 1330. Therefore, the court's analysis of McCain's Title VII claim applies equally to his § 1981 claim with one exception noted below.

McCain appears to challenge two separate and independent employment actions.  First, McCain clearly challenges Imery's decision to lay him off.  Second, McCain appears to challenge Imery's failure to promote him to a Mechanic A position.  The court will address each in turn.

For purposes of the Motion, Imery's does not seriously contest that McCain

has established three elements of a prima facie case regarding his lay-off: (1) McCain is in a protected group, (2) he is qualified to work as a Mechanic B, and (3) he suffered an adverse employment action (the lay-off).[6]  Imery's focuses instead on the fourth element of McCain's prima facie case: whether Imery's treated similarly situated non-African-Americans differently than McCain.

McCain's claim fails because he cannot establish this fourth element.  It is undisputed that Imery's laid off <u>all</u> seven (7) Mechanic B's in September 2009. Because Imery's laid off <u>all</u> the Mechanic B's, it could not have treated any Mechanic B better than any other Mechanic B.[7]  Thus, McCain has failed to establish a prima facie case of disparate treatment regarding the lay-off.

And, even if McCain could make out a prima facie case, he has not shown that Imery's legitimate, nondiscriminatory reason for the lay-off was a pretext for discrimination.  Imery's says it instituted the lay-off because of a decrease in sales. (Doc. 26 at 6, ¶ 13.)  It is undisputed that, as part of the lay-off, Imery's eliminated all Mechanic B's from its workforce.  Imery's contends it eliminated the Mechanic

---

[6]  At some point, McCain apparently alleged that he suffered an adverse employment action (1) when his supervisor gave him his work schedule before other white employees and (2) when Imery's required him to take a drug test.  Imery's contests whether these actions qualify as an adverse employment action under Title VII.  (Doc. 26 at 12.)  Because McCain does not respond to Imery's arguments, he has waived this issue.  *See* III.C *infra*.

[7]  Two of the Mechanic B's (McCain and Buford Bryant) were African-American; the other five Mechanic B's were not African-American.

B position in part because the Mechanic B's possessed less skill than Mechanic A's and in part because Article 13 of the collective bargaining agreement required the lay-off to progress through the Mechanic B classification before reaching the Mechanic A's.  Doc. 26 at 7, ¶ 14; *see also* Doc. 27-4 at 15 ("All cases of reduction or changes in the work force shall first be carried out within each classification, within each respective department.").

McCain has offered no evidence or argument that Imery's did not have a decrease in sales.  Nor has McCain challenged Imery's decision to reduce its work force.  Instead, McCain challenges the way that Imery's reduced its work force.  Specifically, he disputes whether the Mechanic A's were in fact more skilled than the Mechanic B's.

Even assuming that McCain is correct, his contention does not show that the lay-off was a pretext for discrimination.  It is undisputed that Imery's required Mechanic B's to pass the Mechanic A test to become a Mechanic A.  Apparently, Imery's views the Mechanic A test as an indicator of skill level.  The court expresses no opinion on the wisdom of Imery's view.  It notes only that Imery's view is a permissible business judgment so long as the Mechanic A test does not unlawfully discriminate against Imery's employees.  It is undisputed that McCain never passed the Mechanic A test.  Because McCain never passed the test, he

14

never became a Mechanic A.  And, because McCain was a Mechanic B instead of a Mechanic A, Imery's viewed him as a lesser skilled mechanic.  Imery's says it included McCain in the lay-off for that reason.  McCain has produced no evidence from which a reasonable jury could infer Imery's reason is merely a pretext for discrimination.[8]  For this additional reason, McCain's disparate treatment claim related to the lay-off fails.

McCain also contends that several white employees were promoted to a Mechanic A position either without having to take the Mechanic A test or despite having failed it.   These contentions are immaterial to McCain's lay-off claim.  Admittedly, if Imery's had promoted McCain to a Mechanic A position, he would not have been included in the September 2009 lay-off.  But, if that is McCain's theory, then McCain concedes the lay-off decision was motivated by his Mechanic B classification, not his race.  Thus, it appears McCain is actually challenging Imery's failure to promote him.

---

[8]  Furthermore, McCain does not argue that Imery's improperly applied Article 13 of the collective bargaining agreement.  Because this legitimate non-discriminatory reason remains unchallenged, Imery's is entitled to summary judgment on McCain's disparate treatment claims related to the lay-off.  *See Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007) ("If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment.")

If McCain is challenging Imery's failure to promote him, his claims also fail. Here, the Title VII and § 1981 analyses diverge. McCain's Title VII failure-to-promote claim fails because it is untimely. McCain took the Mechanic A test in 2008.[9] (Doc. 27-1 at 12.) It is unclear when in 2008 McCain took the test, but it is clear that he filed his EEOC charge alleging race discrimination on December 21, 2009, over three hundred and fifty-four (354) days into 2009.[10] (Doc. 26 at 9, ¶ 21.) Thus, McCain's failed to file an EEOC charge within one hundred and eighty (180) days of Imery's failure to promote him. Because he failed to do so, McCain's Title VII failure-to-promote claim is time barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073 (2002).[11]

McCain's § 1981 failure-to-promote claim fails because McCain has no admissible evidence showing he was treated differently than white employees. At summary judgment, a district court may not consider evidence which could not be reduced to an admissible form at trial. *See Macuba v. Deboer*, 193 F.3d 1316,

---

[9] McCain also took the Mechanic A test on September 15, 2011. (Doc. 26 at 6, ¶ 12.) He scored a twenty-nine (29). (*Id.*) However, McCain did not file a new charge of discrimination related to the 2011 test.

[10] Even if McCain were to get the benefit of his initial EEOC charge (filed on August 25, 2009), he was still two hundred and thirty-six (236) days into 2009.

[11] The statute of limitations for a § 1981 claim is four years. *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337–38 (11th Cir. 2008). Thus, McCain's § 1981 failure-to-promote claim is timely.

16

1323 (11th Cir. 1999).  McCain alleges that Imery's allowed two white employees,

Charles Stephenson and Tony Abrams, to become Mechanic A's without passing

the test.  (*See* Doc. 32-1 at 7, ¶ 17–18.)  Specifically, McCain says that Stephenson

informed him that he was promoted without having to take, much less pass, the

Mechanic A test.  (Doc. 32-1 at 13, ¶ 18.)  McCain also says that Abrams said that

he received extra points from Shelby Halverson, a white supervisor, so he could

pass the Mechanic A test.  (Doc. 32-1 at 7, ¶ 17.)  Because McCain offers

Stephenson's and Abrams's statements for their truth, the statements are hearsay,

and therefore, inadmissible.  (*See* Doc. 36 at 15–16) (objecting to McCain's

Declaration).  Thus, the court cannot consider these statements in resolving

Imery's Motion.

McCain's other evidence, although admissible, does not show that Imery's

gave white employees special treatment.  First, McCain contends that two white

employees, Timothy Denton and Tony Abrams, failed the Mechanic A test in

2006, but still became Mechanic A's in 2007.  (Doc. 33 at 26.)  McCain argues

that Imery's records do not show that these employees took and passed the test in

2007.  (*Id.*)  However, McCain overlooks the fact that, in the Spring of 2007,

Imery's lowered the passing score on the Mechanic A test to an eighty-nine (89).

(Doc. 32-4 at 9.)  Both Denton and Abrams scored eighty-nine (89) or higher

when they took the test in 2006.  (Doc. 32-2 at 5, 7.)  Thus, their promotions in 2007 are consistent with Imery's decision to lower the passing test score.  Put simply, Imery's lowered its standards, which made some previously unqualified individuals qualified.  Conversely, McCain did not qualify, even under Imery's lower standards.  (*See* Doc. 32-3 at 21) (showing McCain scored a forty-one (41) on the Mechanic A test).  That Denton and Abrams did not retake the test in 2007 does not matter.

Second, McCain contends that Michael Black and Leslie Buchanan became Mechanic A's although they never scored eighty-nine or higher on the Mechanic A test.  (*See* Doc. 33 at 26; Doc. 32-3 at 21.)  But again, McCain overlooks the fact that both Black and Buchanan successfully completed all eight training courses offered through the Alabama Technology Network.  (Doc. 32-3 at 21.) Therefore, these men qualified to become Mechanic A's through an alternate route.  McCain, like Black and Buchanan, also participated in the eight training courses, but only successfully completed seven of them.  Thus, McCain did not qualify to become a Mechanic A.  Because Abrams, Denton, Black, and Buchanan all qualified to become Mechanic A's (either by passing the Mechanic A test or by completing the eight training courses), they are not similarly situated to McCain, who never qualified to become a Mechanic A.  Thus, their promotions do not

18

show that Imery's treated white employees better than McCain.

Because McCain has no admissible evidence which shows that Imery's treated him less favorably than a similarly situated white employee, he cannot establish a prima facie case on his § 1981 failure-to-promote claim.[12]

 For the foregoing reasons, McCain has failed to establish a prima facie case of disparate treatment under Title VII or § 1981.  Additionally, regarding McCain's lay-off claims under Title VII and § 1981, he has not shown pretext. Finally, McCain's Title VII failure-to-promote claim is untimely.  Thus, Imery's Motion is due to be **GRANTED** as to McCain's disparate treatment claims.

### B.    McCain's Title VII Disparate Impact Claim

Count II of McCain's Amended Complaint alleges a disparate impact violation under Title VII.  (Doc. 7 at 5.)  Imery's contends that McCain's disparate impact claim is untimely.  (Doc. 26 at 13 n.2.)  The court rejects this argument.

*Gonzalez* is directly on point.  In *Gonzalez*, the former Fifth Circuit said, "Where an employee charges an employer with continuously maintaining an illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of

---

[12]  Even if McCain's Title VII failure-to-promote claim were timely, it would still fail on the merits for the reasons set out in the court's analysis of McCain's § 1981 failure-to-promote claim.

that practice." 610 F.2d at 249.  In *Gonzalez*, the allegedly unlawful employment

practice was a written test.  *Id.*  Here, like *Gonzalez*, McCain contends Imery's

Mechanic A test prevents him and other African Americans from becoming

Mechanic A's.  It is undisputed that a white employee took and passed the

Mechanic A test on January 12, 2010.  Forty-three (43) days later, on February 24,

2010, McCain amended his EEOC charge to include a disparate impact claim.

Thus, McCain's disparate impact charge is timely because it came within one-

hundred eighty (180) days of an administration of Imery's allegedly discriminatory

test.  *See Beaver*s, 975 F.2d at 798; *Gonzalez*, 610 F.2d at 249.[13]

   In its Reply, Imery's contends—for the first time—that McCain's disparate

impact claim fails on the merits.  (Doc. 36 at 8–12.)  The court will not consider

these arguments because Imery's failed to raise them in their initial summary

judgment brief.  Doc. 26; *see, e.g.*, *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d

1338, 1342 (11th Cir. 2005) (explaining that a court need not consider arguments

or issues raised for the first time in a party's reply brief).  Thus, Imery's Motion is

due to be **DENIED** as to McCain's disparate impact claim.[14]

---

[13] Because the court finds that McCain's claim is timely under *Gonzalez* and *Beavers*, the
court expresses no opinion on McCain's alternate argument that his claim is timely under the
Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5.  (*See* Doc. 33 at 22–23.)

[14] A disparate impact claim requires: (1) a statistical disparity between a protected and
non-protected class, (2) a facially neutral employment practice, and (3) a causal connection

### C.    McCain's Other Claims

Count III of McCain's Amended Complaint alleges a claim for violation of the ADEA.  (Doc. 7 at 6.)  Because McCain has failed to present any argument on this claim, it is abandoned.  *See, e.g.*, *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *see also McMaster v. United States*, 177 F.3d 936, 940–41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Bute v. Schuller Int'l, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned).

## IV.   CONCLUSION

For these reasons, Imery's Motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

---

between the disparity and the employment practice.  *See EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274 (11th Cir. 2000).  The third element requires "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994, 108 S. Ct. 2777, 2789 (1988).  In its Reply, Imery's contends that McCain lacks any statistical evidence to support his disparate impact theory.  (Doc. 37 at 9–11.)  If McCain indeed has no statistical evidence to support his disparate impact claim, as Imery's contends, he will be unable to prove this claim at trial.

A.    On McCain's Disparate Treatment Claims (Count I), the Motion is **GRANTED**.

B.    On McCain's Disparate Impact Claim (Count II), the Motion is **DENIED**.

C.    On McCain's ADEA Claim (Count III), the Motion is **GRANTED**.

The court will set a final pretrial conference by separate order.

DONE and **ORDERED** this the 7th day of February, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

22